F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**May 1, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

LINDSEY K. SPRINGER,

      Plaintiff-Appellant,

v.

INTERNAL REVENUE SERVICE, ex
rel. United States of America, by and
through its Officers and Employees,
FRED RICE; SCOTT PENNEY;
LELAND BOWEN,

      Defendants-Appellees.

No. 05-6387
(D.C. No. CIV-05-466-F)
(W.D. Okla.)

---

LINDSEY K. SPRINGER,

      Plaintiff-Appellant,

v.

INTERNAL REVENUE SERVICE, ex
rel. United States of America, by and
through its Officers and Employees,

      Defendant-Appellee.

No. 06-5123
(D.C. No. 06-CV-110-CVE-PJC)
(N.D. Okla.)

---

LINDSEY K. SPRINGER,

      Plaintiff-Appellant,

v.

INTERNAL REVENUE SERVICE by
and through the United States of
America; FRED RICE; SCOTT

No. 06-6268
(D.C. No. CIV-05-1075-F)
(W.D. Okla.)

PENNEY; LELAND NEUBAUER,

Defendants-Appellees.

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

Plaintiff Lindsey Springer, a tax protester, describes himself as the founder of "Bondage Breakers Ministries," organized in 1992, whose sole purpose is "to expose the violations of the written law committed by the Internal Revenue Service [(IRS)]." R., Doc. 1 at 5, ¶ 9.[1] He appeals from three separate judgments, two of which concern his liability for federal income taxes, penalties, and interest for 1990-1995 and the IRS's attempt to collect. His third appeal is a broader challenge to the IRS's general power to collect failure-to-file penalties for 1982-2006. We have combined the appeals for disposition. Because Springer appears pro se, we review his pleadings and other papers liberally and hold them

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). These cases are therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] References to the record are to the record in appeal No. 05-6387 unless otherwise noted.

to a less stringent standard than those drafted by attorneys, but we do not act as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district courts' judgments. Because the appeals are frivolous and brought for purposes of delay, we impose monetary sanctions on Springer. We also propose filing restrictions.

## I. Background

The heart of these appeals represents Springer's latest push in a long campaign to challenge his liability for federal income taxes, penalties, and interest, and to delay collection. In 1996, the IRS sent Springer two notices of deficiency concerning unpaid income taxes for 1990 through 1995, years in which Springer filed no federal income tax returns. He challenged the notices in the United States Tax Court, arguing, among other things, that a tax on income amounts to involuntary servitude in violation of the Thirteenth Amendment and that the Sixteenth Amendment does not authorize the Commissioner of the IRS to collect taxes. In upholding the notices of deficiency, the Tax Court characterized Springer's arguments as "nothing but tax protester rhetoric and legalistic gibberish" and imposed a $4,000 sanction because the challenge was frivolous and made only for the purpose of delaying collection. *See* R., Doc. 16, Ex. 5 at 2 (copy of *Springer v. Comm'r*, No. 26045-96 (T.C. Feb. 10, 1997) (unpublished)). We dismissed Springer's appeal of that decision because he had failed to pay a prior $2,000 sanction this court imposed in a separate frivolous appeal. *See* R.,

Doc. 16, Ex. 6 (copy of *Springer v. Comm'r*, No. 97-9008 (10th Cir. Oct. 15, 1997) (unpublished order of dismissal)). The Supreme Court denied his petition for a writ of certiorari. *Springer v. Comm'r*, 524 U.S. 920 (1998).

On March 2, 2005, the IRS sent Springer a notice of intent to levy his assets in order to collect the tax liability adjudicated in the earlier proceeding. *See* R., Doc. 1, Ex. 9. The notice indicated that the amount owed, including penalties and interest, was $300,071.56. *Id.* at 2. Springer requested a pre-levy collection due process (CDP) hearing pursuant to 26 U.S.C. § 6330, arguing, among other things, that he earned no taxable income for 1990-1995, but was living off of gifts and donations; that the IRS improperly had determined the amount of his tax liability; and that a provision of the Paperwork Reduction Act of 1995 (PRA) protected him from any penalties arising from his failure to file tax returns for 1990-1995 because, he claimed, IRS Form 1040 and its variants lacked a valid control number from the Office of Management and Budget (OMB) for those years. The hearing officer assigned to the matter, defendant Scott Penney, informed Springer that he was entitled only to an unrecorded telephonic hearing because the claims he raised were frivolous, and that he would not be permitted to challenge his tax liability because he already had an opportunity to appeal that determination from the notices of deficiency.

On April 25, 2005, one day before the CDP hearing, Springer filed the action underlying appeal No. 05-6387. He asserted that the claimed tax

-4-

deficiencies were erroneous and requested a variety of injunctive relief, including that defendants provide an impartial hearing officer, record the hearing, and obtain verification that the underlying tax liability was computed in accordance with all applicable laws and administrative procedures as required by 26 U.S.C. § 6330(c)(1). He also sought an injunction directing the defendants to consider his PRA defense and evidence of errors concerning the underlying tax liabilities, in particular that some of the liabilities were improperly derived from Bureau of Labor statistics and that some were based on a bogus Form 1099.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. They argued that sovereign immunity applied; that the Anti-Injunction Act, 26 U.S.C. § 7421(a) (AIA), barred the relief Springer sought; that the Tax Court, not the district court, had exclusive jurisdiction over the CDP matter; that Springer could not use the CDP hearing to challenge the tax liabilities that the Tax Court had upheld; and that he had not exhausted his administrative remedies. Concluding that the AIA barred Springer's action, the district court dismissed the case for lack of subject matter jurisdiction. *See Springer v. United States*, No. 05-466, 2005 WL 2467775, at *2-4 (W.D. Okla. Oct. 6, 2005) (unpublished) (*Springer I*).

Meanwhile, Penney held the telephonic CDP hearing on April 26, 2005. On August 16, the Office of Appeals issued notices of determination approving the proposed levy. Springer appealed those determinations in a separate suit filed

in federal district court on September 15, 2005, from which appeal No. 06-6268 arises. Defendants moved to dismiss for substantially the same reasons they advanced in their motion to dismiss in *Springer I*. The district court took judicial notice of its dismissal order in *Springer I*, which it characterized as a dismissal based on the Tax Court's exclusive jurisdiction over Springer's underlying income tax dispute, noted that the substance of *Springer I* and the second lawsuit concerned the same general claims, and dismissed the action on the ground that *Springer I* barred it under principles of res judicata. *See Springer v. United States*, No. 05-1075, 2006 WL 2265521, at *1 (W.D. Okla. Aug. 7, 2006) (unpublished) (*Springer II*). The court also concluded "that dismissal of this action is appropriate . . . for lack of subject matter jurisdiction for the reasons stated in Defendant's motion." *Id*. at *1 n.1.

The third appeal, No. 06-5123, arises from a case Springer filed on February 17, 2006, in which he alleged that he was "the subject of civil actions and criminal investigations in the Northern District and Western District of Oklahoma" involving "the claim or threat of penalty by the [IRS] for failure to supply information upon an information request form labeled Form 1040." No. 06-5123, R., Doc. 1 at 9, ¶ 39. He asserted that IRS Form 1040 and its variants had not complied with the PRA since 1981 because the OMB number was invalid. On that basis, he requested a declaratory judgment concerning whether the IRS could, among other things, pursue any penalty, civil or criminal, for the

years 1982-2006, ostensibly against either him or others. He also sought a preliminary injunction against the alleged investigations into his failure to supply information on income tax returns. The district court dismissed the case for lack of subject matter jurisdiction under the AIA and because the PRA does not authorize a private right of action but acts as a defense. *See Springer v. United States*, 447 F. Supp. 2d 1235, 1238-39 (N.D. Okla. 2006) (*Springer III*).

## II. Discussion

### A. *Springer I* and *Springer II*

We have conducted a de novo review of the holding in *Springer I* that the court lacked subject matter jurisdiction under the AIA, *see Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004), and affirm on that basis. We affirm *Springer II* on the ground that the Tax Court had exclusive jurisdiction over that case. *See United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (explaining that we are free to affirm on any grounds for which there is a sufficient record to permit conclusions of law).

The AIA provides that, subject to certain statutory exceptions, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). The purpose of the AIA "is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed

sums be determined in a suit for refund." *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1, 7 (1962). Because penalties and interest arising from the failure to pay taxes are assessed as taxes, *see* 26 U.S.C. § 6665(a)(2), the AIA bars actions seeking to enjoin their assessment. *See Nuttelman v. Vossberg*, 753 F.2d 712, 714 (8th Cir. 1985) (per curiam) (holding that penalties and interest are subject to the AIA); *cf. Souther v. Mihlbachler*, 701 F.2d 131, 132 (10th Cir. 1983) (per curiam) (holding that civil penalties imposed under 26 U.S.C. § 6682 for making false statements in connection with withholding are taxes within the meaning of the AIA).

The statutory exception to the AIA that Springer raised in the district court is 26 U.S.C. § 6330(e)(1).[2] Section 6330(e)(1) permits a party to seek injunctive relief in a proper court when the IRS initiates a levy during the statutory period of suspension that is triggered by the request for a CDP hearing. *Hart v. United States*, 291 F. Supp. 2d 635, 645 (N.D. Ohio 2003). Contrary to Springer's

---

[2] In relevant, part, 26 U.S.C. § 6630(e)(1) provides:

> [I]f a [CDP] hearing is requested under subsection (a)(3)(B), the levy actions which are the subject of the requested hearing . . . shall be suspended for the period during which such hearing, and appeals therein, are pending. In no event shall any such period expire before the 90th day after the day on which there is a final determination in such hearing. Notwithstanding the provisions of section 7421(a), the beginning of a levy or proceeding during the time the suspension under this paragraph is in force may be enjoined by a proceeding in the proper court, including the Tax Court.

argument, the exception is not triggered by the mere issuance of a notice of intent to levy. As the district court correctly determined, Springer had not alleged that the IRS had begun to levy his assets during the pendency of his CDP hearing, and the record indicates that the IRS had in fact suspended collections. Thus, Springer failed to bring himself within this statutory exception.[3]

Springer also relied on a judicially created exception to the AIA that allows an injunction if it is clear that "under no circumstances could the Government ultimately prevail" and if equity jurisdiction otherwise exists, *see Enochs*, 370 U.S. at 7. Springer cannot meet either of these requirements. The government ultimately could prevail in levying Springer's assets because the issue of his income tax liability for 1990-1995 was finally determined in his earlier suit, 26 U.S.C. § 6331(a) authorizes the IRS to impose the levy, and the levy could be sustained if the CDP hearing comported with applicable law. As to the second requirement, an adequate remedy at law will preclude the exercise of equity jurisdiction. *See Wyo. Trucking Ass'n v. Bentsen*, 82 F.3d 930, 935 (10th Cir. 1996). Springer cannot show the absence of an adequate legal remedy. To the contrary, he already has availed himself of an adequate legal remedy

---

[3] The district court also concluded that to the extent he relied on the § 6330(e)(1) exception, Springer had brought his claims in the wrong court. Because we agree that the IRS had suspended its collection activities and therefore Springer could not invoke the exception, we need not address the district court's alternate conclusion.

concerning his liability—he litigated in the Tax Court and lost. Additionally, his ability to appeal the result of the CDP hearing under 26 U.S.C. § 6330(d)(1) provides him with an adequate legal remedy concerning the levy procedure.

*Springer II* was an appeal from the notices of determination issued at the conclusion of the CDP hearing. Springer, however, brought the appeal in the wrong court. Under the statute as it read at the time he filed *Springer II*, he was required to bring his appeal in the Tax Court, not the district court, because the underlying tax liability concerned income taxes. *See* 26 U.S.C. § 6330(d)(1) (2000) (providing that an appeal of a CDP determination must be brought to the Tax Court if it has jurisdiction of the underlying tax liability);[4] *Voelker v. Nolen*, 365 F.3d 580, 581 (7th Cir. 2004) (per curiam) (Tax Court has jurisdiction over appeals from CDP hearings involving income taxes); *accord Marino v. Brown*, 357 F.3d 143, 146 (1st Cir. 2004) (per curiam). For this reason, the district court lacked subject matter jurisdiction, and we need not address the preclusive effect of *Springer I* on *Springer II*. Springer's argument that one of the notices of determination directed him to appeal to a United States District Court does not defeat the fact that the district court lacked jurisdiction. Parties cannot confer

---

[4]    In 2006, Section 6330(d)(1) was revised to direct all appeals from CDP hearings to the Tax Court. *See* Pub. L. No. 109-280, § 855(a), 120 Stat. 780, 1019 (2006). The revision does not affect our review.

subject matter jurisdiction on a federal court by their actions. *Prier v. Steed*,

456 F.3d 1209, 1214 (10th Cir. 2006).[5]

## B. *Springer III*

In *Springer III*, Springer requested declaratory and injunctive relief based

on the public protection provision of the PRA, which he claimed precluded the

IRS from collecting any penalties arising from his failure to file a federal income

tax return for calendar years 1982 through 2006. Exercising de novo review, *see*

*Karr v. Hefner*, 475 F.3d 1192, 1200 (10th Cir. 2007) (question of statutory

construction reviewed de novo), we affirm the district court on the ground that the

PRA creates a defense, not a private right of action, and therefore we need not

reach the alternate basis for the district court's disposition, that the AIA barred

the action.

---

[5] In view of our jurisdictional disposition, we do not reach the merits of *Springer I* and *Springer II*. But we note that res judicata, which we may raise sua sponte, would bar those actions to the extent Springer challenges the fact of his liability for income taxes, interest, and penalties for 1990-1995. *See Arizona v. California*, 530 U.S. 392, 412 (2000) (holding that sua sponte application of res judicata is appropriate in "special circumstances," including when court is on notice that it has previously decided a matter); *United States v. Sioux Nation of Indians*, 448 U.S. 371, 433 (1980) (Rehnquist, J., dissenting) (explaining that res judicata is a doctrine adopted by the courts to prevent litigants from unduly consuming the time of the courts by seeking to relitigate matters already decided); *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (setting forth test for application of res judicata). Springer's barred challenge to his tax liability for 1990-1995, which has unduly consumed judicial resources, lends further support for the filing restrictions we propose below.

The PRA's public protection provision is 44 U.S.C. § 3512. It states:

(a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if--

(1) the collection of information does not display a valid control number assigned by the Director [of the OMB] in accordance with this subchapter; or

(2) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.

(b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.

44 U.S.C. § 3512. The question is whether subsection (b) of the statute provides a right of action or only a defense. The Ninth Circuit has stated that it "is apparent from subsection (b)" that the PRA "authorizes its protections to be used *as a defense*. [It] does not authorize a private right of action." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 844 (9th Cir. 1999). We agree. In subsection (b), the meaning of the phrase "defense, bar, or otherwise" is the pivotal consideration. Applying the statutory canon of *ejusdem generis*, we readily conclude that "or otherwise" in § 3512(b) embraces only procedural devices similar to complete defenses or bars; the phrase does not function to expand subsection (b) into a right of action. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15 (2001) (explaining that *ejusdem generis* is "the

-12-

statutory canon that where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words") (quotation and alteration omitted).

Our conclusion is supported by the language that follows "defense, bar, or otherwise." Although, as Springer points out, that language permits the defense to be raised "at any time," it may only be raised at any time "during the agency administrative process" or in a "judicial action applicable" to that process. 44 U.S.C. § 3512(b). Thus, § 3512 may only be invoked as a defense "at any time during ongoing proceedings." *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 244 F.3d 144, 150 (D.C. Cir. 2001) (discussing *Saco River Cellular, Inc. v. F.C.C.*, 133 F.3d 25, 31 (D.C. Cir. 1998)).

Springer did not raise the PRA as a defense or in a judicial action applicable to any agency administrative process. Rather, he raised it as a claim in an independent action, a fact that is underscored by the relief sought under the PRA—an injunction against conduct alleged to have occurred in connection with other pending civil actions and criminal investigations. Because § 3512(b) does not provide a right of action, the district court properly dismissed the case.

### III. Monetary Sanctions and Filing Restrictions

#### A. Monetary Sanctions

Defendants have filed motions for sanctions in appeal No. 05-6387 (from *Springer I*) and appeal No. 06-5123 (from *Springer III*), each of which requests a flat fee of $8,000 to compensate them for attorney's fees and costs in defending what they argue are frivolous appeals. Springer thus has had notice and an opportunity to respond, as required by *Braley v. Campbell*, 832 F.2d 1504, 1514 (10th Cir. 1987). This court has the power to award just damages and single or double costs if the court "determine[s] that an appeal is frivolous" or brought for purposes of delay. Fed. R. App. P. 38; 28 U.S.C. § 1912. "An appeal is frivolous when the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley*, 832 F.2d at 1510 (quotation omitted).

We determine that appeal No. 05-6387 and appeal No. 06-5123 are frivolous and brought for purposes of delay. When the IRS issued its notices of deficiency in 1996, Springer had two options, to pay the tax and sue for a refund under 26 U.S.C. § 7422 or to petition the Tax Court for a redetermination under 26 U.S.C. § 6213(a). *See Taylor v. Allan*, 204 F.2d 485, 486 n.4 (10th Cir. 1953). He chose the latter option, and the Tax Court ruled against him, a judgment that is now incontestable. When the IRS issued its notice of intent to levy, Springer properly requested a CDP hearing, but he challenged that hearing in a jurisdictionally defective action, *Springer I*, then took a frivolous appeal from the

-14-

dismissal of that action. *Springer III* was dismissed as a procedurally improper means of challenging the government's power to impose penalties arising from the failure to file federal income tax returns for 1982-2006, and his appeal from that dismissal also was frivolous. Moreover, many of his arguments take issue with the fact of his underlying liability for 1990-1995, a fact that is no longer open to challenge. Accordingly, we conclude that the results in appeal No. 05-6387 and appeal No. 06-5123 are obvious, that Springer's arguments are wholly without merit, and that these appeals were brought to delay further the collection of his federal income tax liability for 1990-1995. Defendants' motions, therefore, have a sound basis.[6]

In support of their requests for a flat fee of $8,000 in both *Springer I* and *Springer III*, defendants state that "[a]ccording to the records of the Tax Division of the Department of Justice, the average expense in attorney salaries and other costs incurred by this office in the defense of frivolous taxpayer appeals in which sanctions were awarded during 2004 and 2005 is approximately $11,042." No. 05-6387, Appellees' Mot. for Sanctions at 7; *see also* No. 06-5123, Appellees' Mot. for Sanctions at 5-6 (substantially the same). We granted a similar request for $8,000 in *Kyler v. Everson*, 442 F.3d 1251, 1253-54 (10th Cir.

---

[6] Like *Springer I*, *Springer II* was a jurisdictionally defective challenge to the CDP hearing, and the appeal from *Springer II* also is frivolous. Because the government has not asked for sanctions in that appeal, we base our award of monetary sanctions on the other two appeals.

2006). But under the unique circumstances of *Springer I* and *Springer III*, we conclude that just damages are $4,000 for each of the two appeals, for a total of $8,000.[7] *See Stafford v. United States*, 208 F.3d 1177, 1179 (10th Cir. 2000) (granting request for $4,000 sanction in frivolous tax appeal). We expressly note that this award is not meant to establish a presumptive or flat-fee sanction to be used in all frivolous tax appeals.

## B. Filing Restrictions

Federal courts have the inherent power under 28 U.S.C. § 1651(a) to regulate the activities of abusive litigants by imposing carefully tailored restrictions under appropriate circumstances. *See Winslow v. Hunter (In re Winslow)*, 17 F.3d 314, 315 (10th Cir. 1994) (per curiam); *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989) (per curiam). Injunctions restricting further filings are appropriate where (1) the litigant's lengthy and abusive history is set forth; (2) the court provides guidelines as to what the litigant may do to obtain its permission to file an action; and (3) the litigant receives notice and an opportunity to oppose the court's order before it is implemented. *See Tripati*, 878 F.2d at 353-54.

---

[7] Although we have remanded cases to the district court to make findings of fact related to an award of just damages, *see, e.g., Beilue v. Int'l Bhd. of Teamsters, Local No. 492*, 13 F. App'x 810, 815 (10th Cir. 2001) (unpublished), Springer has not opposed the amount that defendants request, and remand therefore is unnecessary. (We cite *Beilue* for informational purposes only, not as precedent. *See* 10th Cir. R. 32.1(A).)

As discussed above, these combined appeals are frivolous. Additionally, Springer has a long history of filing meritless federal actions and appeals pro se. We found his first tax appeal frivolous and imposed a $2,000 sanction. *See Springer v. IRS*, Nos. 95-5072 & 95-5142, 1996 WL 164459 (10th Cir. Apr. 8, 1996) (unpublished). We dismissed four other tax-related appeals because Springer had not paid that sanction. *See Springer v. United States*, No. 98-5056 (10th Cir. June 15, 1998) (unpublished order of dismissal); *Springer v. United States*, No. 97-5095 (10th Cir. Oct. 16, 1997) (unpublished order of dismissal); *Springer v. United States*, No. 97-5093 (10th Cir. Oct. 16, 1997) (unpublished order of dismissal); *Springer v. Comm'r*, No. 97-9008 (10th Cir. Oct. 15, 1997) (unpublished order of dismissal). In yet another tax case where Springer was a plaintiff but not an appellant, we noted the district court had properly granted summary judgment against the plaintiffs on their claim that federal taxation amounted to involuntary servitude and imposed monetary sanctions for the frivolous appeal. *See Buckner v. United States*, No. 98-5057, 1999 WL 61071, at *1 (10th Cir. Feb. 4, 1999) (unpublished). And as noted above, the Tax Court imposed a $4,000 sanction for Springer's frivolous appeal from the notices of deficiency concerning his 1990-1995 income tax liability.

Springer has not found any more litigation success outside of the tax arena. In *Springer v. Alabama*, we imposed a $1,000 sanction on Springer for filing a frivolous appeal of the district court's dismissal, on sovereign immunity grounds,

of his claim that the respective ballot laws of all fifty states violated his constitutional right to run for president. *See* No. 99-5227, 2000 WL 305492, at *1 (10th Cir. Mar. 24, 2000) (unpublished). He also brought a similar suit against the election officials of all fifty states. In that case, we affirmed the district court's dismissal because Springer had failed to identify a legal theory entitling him to relief, *see Springer v. Balough*, No. 00-5071, 2000 WL 1616246, at *2 (10th Cir. Oct. 30, 2000) (unpublished), and we later affirmed the district court's assessment of costs against him, *see Springer v. Rancourt*, 17 F. App'x 824, 826 (10th Cir. 2001). We summarily affirmed the district courts' dismissal of Springer's libel and slander claims in *Springer v. The Infinity Group Co.*, No. 98-5182, 1999 WL 651391, at*2 (10th Cir. Aug. 26, 1999). And we affirmed the dismissal of another case in which Springer asserted that the defendants had breached a contract to pay a $1,000,000 reward for information leading to the arrest and conviction of anyone involved in the assassination of President John F. Kennedy on the ground that Springer had sued the wrong defendant. *See Springer v. Hustler Magazine*, No. 99-5117, 1999 WL 979242, at *2 (10th Cir. Oct. 28, 1999) (unpublished).

In view of his abusive pattern of filing frivolous or malicious actions and appeals pro se, we must restrict Springer's access to the courts. "The right of access to the courts is neither absolute nor unconditional, and there is no constitutional right of access to the courts to prosecute an action that is frivolous

or malicious." *Winslow*, 17 F.3d at 315 (quotation and alteration omitted). "[W]here, as here, a party has engaged in a pattern of litigation activity which is manifestly abusive, restrictions are appropriate." *Id.* (quotation omitted).

Our filing restrictions must be narrowly tailored. *See Tripati*, 878 F.2d at 352. But as our review indicates, Springer has not limited the scope of his baseless attacks to the tax arena or a particular set of defendants. Thus, Springer's litigation history does not present circumstances similar to those we recently considered in *Sieverding v. Colorado Bar Association*, 469 F.3d 1340, 1345 (10th Cir. 2006), where we modified a district court's filing restrictions by limiting them to filings against only those persons and entities against whom the plaintiff had a history of proceeding, without regard to subject matter. Therefore, subject to Springer's opportunity to object, as described below, we propose the following reasonable filing restrictions on future filings by Springer "commensurate with our inherent power to enter orders 'necessary or appropriate' in aid of our jurisdiction." *Winslow*, 17 F.3d at 315 (quoting 28 U.S.C. § 1651(a)).

Springer is ENJOINED from proceeding in this court as a petitioner in an original proceeding or as an appellant in a civil matter (except in these combined appeals) unless he is represented by a licensed attorney admitted to practice in this court or unless he first obtains permission to proceed pro se. To obtain permission to proceed pro se, Springer must take the following steps:

-19-

1. File a petition with the clerk of this court requesting leave to file an original proceeding or to proceed pro se on appeal. If Springer seeks to proceed pro se on appeal, he must file the petition with the clerk of this court not more than ten days after filing his notice of appeal in the district court;

2. Include in the petition the following information:

A. A list of all lawsuits currently pending or filed previously with this court, including the name, number, and citation, if applicable, of each case, and the current status or disposition of the appeal or original proceeding; and

B. A list apprising this court of all outstanding injunctions or orders limiting Springer's access to federal court, including orders and injunctions requiring him to seek leave to file matters pro se or requiring him to be represented by an attorney, including the name, number, and citation, if applicable, of all such orders or injunctions; and

3. File with the clerk of this court a notarized affidavit, in proper legal form, which recites the issues Springer seeks to present, including a short discussion of the legal basis asserted therefor, and describing with particularity the order being challenged. The affidavit also must certify, to the best of Springer's knowledge, that the legal arguments being raised are not frivolous or made in bad faith, that they are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, that the appeal or other matter is not interposed for any improper purpose such as delay or

to needlessly increase the cost of litigation, and that he will comply with all appellate and local rules of this court. The affidavit must be filed with the petition and is therefore subject to the same ten-day filing deadline as the petition in the case of a pro se appeal.

These documents shall be submitted to the clerk of this court. The matter will be dismissed for failure to prosecute if the required documents are not submitted, are submitted in an improper form, or are untimely submitted. If the matter is not dismissed for failure to prosecute, the clerk shall forward the documents to the Chief Judge or the Chief Judge's designee for review to determine whether to permit Springer to file an original proceeding or to pursue an appeal. This review will take into account the preclusive effect of the Tax Court's determination in *Springer v. Comm'r*, No. 26045-96 (T.C. Feb. 10, 1997) (unpublished), as to the fact of Springer's liability for federal income taxes, penalties, and interest for 1990-1995 and the government's right to collect that liability, matters that are not subject to further litigation. Without the approval of the Chief Judge or the Chief Judge's designee, the matter will be dismissed. If the Chief Judge or the Chief Judge's designee approves the petition, an order shall be entered indicating that the matter shall proceed in accordance with the Federal Rules of Appellate Procedure and the Tenth Circuit Rules.

Springer shall have ten days from the date of this order and judgment to file written objections to these proposed filing restrictions. *See Winslow*, 17 F.3d at

316. The response shall be limited to fifteen pages. *See id.* If Springer does not timely file objections, the filing restrictions shall take effect twenty days from the date of this order and judgment, and the filing restrictions shall apply to any matter filed after that time, except for further filings in these combined appeals. *Id.* at 316-17. If Springer does file timely objections, the filing restrictions shall not take effect until after this court has ruled on those objections.

## IV. Conclusion

The judgments of the district courts are AFFIRMED. Appellees' motion for sanctions in appeal No. 05-6387 is GRANTED IN PART in the amount of $4,000. Appellee's motion for sanctions in appeal No. 06-5123 is GRANTED IN PART in the amount of $4,000. It is ORDERED that, within thirty days of the date this order and judgment is filed, Springer shall make arrangements with appellees' counsel for payment of the sanctions. It is FURTHER ORDERED that Springer shall pay the sanctions in accordance with those arrangements.

Springer's motion to file a thirty-two page reply brief in appeal No. 05-6387 is GRANTED. Springer's other pending motions are DENIED.

Entered for the Court

Stephen H. Anderson
Circuit Judge